A. W. CRAWFORD, Appellant, v. CHAS. L. FOREMAN ET AL.,
    Appellees, and A. W. CRAWFORD, Appellant, v. CHAS. L.
    FOREMAN ET AL., Appellees.

**Sheriff's sale of land:** CANCELLATION: CAVEAT EMPTOR. The rule of caveat emptor applies to sales of land on mortgage foreclosure, and such sales will not be set aside at the suit of a purchaser merely because of his mistake of law or his own error in the amount bid; especially where his contemplated plan of bidding, if carried out, would have materially prejudiced the judgment debtor.

*Appeal from Madison District Court.*— HON. JAMES H. APPLEGATE, Judge.

WEDNESDAY, JUNE 14, 1905.

ACTIONS to set aside a sheriff's sale of real estate. The trial court denied the relief asked, and plaintiff appeals.— *Affirmed.*

*Steele & Robbins, W. S. Cooper,* and *C. L. Nourse,* for appellant.

*John A. Guiher* and *W. F. Guiher,* for appellees.

DEEMER, J.— Defendant Charles L. Foreman and his wife executed two mortgages upon an 80-acre tract of land owned by them, one to the Iowa Loan & Trust Company, which was first in point of time, and another to one Thomas, from whom they had purchased the property, which was the junior mortgage. Plaintiff purchased these two mortgages, and brought separate actions to foreclose the same. These suits went to decree, and special executions were ordered for the sale of the mortgaged property. The west forty acres of the tract was the homestead of the defendants Foreman, and was selected and platted by them as such. Some judgments were obtained against Foreman during the year 1901, which were liens upon the non-homestead forty acres. Attachment suits were also brought against him on other claims, and a mechanic's lien was also filed. On January 11, 1902, the non-homestead forty was sold on one of the judgments, and one Guiher became the purchaser thereof. No redemption was made from this sale. The mortgages, however, were each prior and superior to the judgment lien, but the sale under the judgment of the non-homestead forty acres disposed of defendant Foreman's equity of redemption. The foreclosure suits were brought January 22, 1903, and the decree on the first mortgage was entered March 9, 1903,

and on the second May 14, 1903. Plaintiff procured executions to issue on the two decrees of foreclosure, and directed the sheriff to sell the non-homestead forty on the execution issued pursuant to the decree in the foreclosure of the Thomas mortgage, subject to the lien of the other mortgage, or, rather, of his rights under an execution which was then in the hands of the sheriff under the foreclosure of the first mortgage.

Plaintiff and his attorney, who was present at the sale, knew of the exact situation of the land as to incumbrances, and they concluded that it would be better to sell the non-homestead forty acres on the execution issued under the foreclosure of the Thomas mortgage; that if there were no bidders present they would make but a small offer for this forty, and then, upon sale of the homestead forty they would bid enough thereat to satisfy the second mortgage claim; in the event there were bidders, then the bid on the non-homestead forty acres should be for all but a small proportion of the amount decreed to be due upon the Thomas mortgage; and that when the homestead forty was offered they would bid enough therefor to satisfy the remainder due on the execution issued on the second mortgage foreclosure, and enough more to cover the amount of the execution issued under the decree foreclosing the first mortgage. At the time of the sale there were bidders present, and plaintiff's attorney asked as to the amount due on the execution under which the sale was to be made, and, after being informed as to the amount thereof, one Guiher made a bid of $1. Plaintiff's attorney thereupon bid $1,000, and, after some spirited bidding, plaintiff's attorney offered either $1,100 or $1,150. Other bidders then desisted, and plaintiff and his attorney then withdrew and finally returned with a bid of $1,202.50, which covered the exact amount of the execution, with interest, taxes, and costs. This bid was accepted, and plaintiff thereupon paid the costs and received a sheriff's certificate of sale. This sale was on June 20, 1903. Thereupon the

plaintiff directed the sheriff to sell the land on the execution issued on the other judgment of foreclosure, and, pursuant to this request, July 25, 1903, was fixed as the time for the sale. At that time the non-homestead forty acres was offered under the execution issued on the foreclosure decree of the first mortgage, and one McCall promptly bid the full amount called for by that execution. The bid was accepted, and a sheriff's certificate of sale was issued to the purchaser. In this manner plaintiff's two mortgages and the decrees and judgments rendered thereon were satisfied by the sale of the non-homestead forty acres of land. This land was not worth to exceed $2,000, but it was sold for practically $2,800 on these two executions. Plaintiff seeks to have these two sales set aside on the ground of mistake. He says that the whole matter was due to his forgetfulness, or to that of his attorney, of the original plan, and that, quoting from his argument, " plaintiff's attorney in some way lost his idea of making a small reservation on his bid at the first sale; the former plan, for some unknown reason, dropping out of mind."

Sheriffs' sales may, of course, in some cases be set aside because of mistake of fact, and in some, perhaps, because of mistake of law. But neither is shown in the present case. Both plaintiff and his attorney were fully advised as to all the material facts. They made no mistake, except to bid more than they originally contemplated doing, and were in no manner deceived by anything that the sheriff or the defendants herein did. Indeed, they came forward, after due consultation and deliberation, and bid what they thought the nonhomestead forty acres of land was worth, thus abandoning their original plan. They even increased their bid after all others had ceased bidding, and purchased the land for the full amount of the execution upon which it was first sold. Doubtless they thought that when offered upon the other execution no one would bid anything for it, in view of the previous sale, and that they would then sell the home-

stead forty acres on the execution issued under the decree of foreclosure of the first mortgage. But however this may be, there was no mistake except as to the effect of the first sale. If they obtained nothing thereby, it is their own fault, and the purchaser at the second sale should not be deprived of his rights thereunder. The rule of *caveat emptor* applies to such sales, and they will not be disturbed if there be nothing more than a mistake of law or forgetfulness on the part of the bidder. *Holtzinger v. Edwards,* 51 Iowa, 383; *Downard v. Crenshaw,* 49 Iowa, 296; *Matless v. Sundin,* 94 Iowa, 111.

Moreover, the arrangement which plaintiff had with his attorney was not such as to secure the approval of a court of equity. Had it been carried out, it might have resulted in depriving Foreman of his homestead as well as the non-exempt property. He had the right to have the non-homestead property sell for its full value, and good faith on the part of plaintiff was required. Had plaintiff sold the non-homestead forty acres for a small sum on the first sale, and then bid a large amount on the homestead forty acres, it would have materially prejudiced the rights of the defendants Foreman. In such cases courts of equity are disposed to leave the parties where it finds them. *Moore v. Olive,* 114 Iowa, 650.

There are no equities in plaintiff's favor, and the decree of the trial court must be, and it is, *affirmed.*